To THE CLERK,                                          Nov 7th, 2023

Please stamp this page "RECEIVED" and
the "DATE" received for:

DEFENDANT'S SECOND MOTION
FOR COMPASSIONATE RELEASE UNDER
18 U.S.C. SECTION 3582 (c)(1)(A)(i)
AND REQUEST FOR EXPEDITED RULING

then, return it in the Self-Addressed
Stamped Envelope to:

⟺71915-066⟺
William Obrien
PO BOX 34550
Fci-Memphis #71915-066
Memphis, TN 38184
United States

Thank You and
Have a Great Day!

Dr. William O'Brien

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | ) | CRIM NO. 15-021 |
| | ) | |
| v. | ) | DATE: _11/7/23_ |
| | ) | |
| WILLIAM O'BRIEN, | ) | |
| Petitioner | ) | |

*Warden's Copy 10/6/23*

**DEFENDANT'S SECOND MOTION
FOR COMPASSIONATE RELEASE UNDER
18 U.S.C. SECTION 3582(c)(1)(A)(i)
AND REQUEST FOR EXPEDITED RULING**

Defendant William O'Brien # 71915-066, an Osteopathic Physician, acting pro se, moves for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i) as amended by Section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, and under the new changes to the United States Sentencing Guidelines (USSG) as of November 1, 2023.  The USSG 1B1.13 added (b)(6) UNUSUALLY LONG SENTENCES and considering 1B1.13(c) LIMITATIONS ON CHANGES IN LAW.

As of November 1, 2023, the United States Sentencing Guidelines (USSG) has been modified to include changes to "extraordinary and compelling reasons" that "warrant a reduction" in sentence.

Petitioner is requesting immediate release, or minimally "home confinement" with his mother.  USSG 1B1.13(b)(6):

> (6) UNUSUALLY LONG SENTENCES.  If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

is exactly the situation defendant is in.  He has served 10 years on a 30 year sentence; with the Supreme Court ruling in RUAN/KAHN he would surely have a mistrial secondary to the mis-stated jury instructions on mens rea; all of the

1 of 12
+ 12 pages of attachments

counts, and there are many that involve the dispensing/distribution of me

medication (including 841's, conspiracy, money laundering) are effected;

Petitioner cannot get any relief from the Court because of "lack of

jurisdiction."  Meaning: cannot obtain a COA for a Second or Successive 2255

nor file a 2241 due to <u>Jones v. Hendrix</u>, 2023 U.S. LEXIS 2632, No. 21-857,

(June 22, 2023).  The sentence being served (30 years) could be no more

than 5 "If" the RUAN/KAHN Supreme Court "substantive change in law" was

applied.  A disparity of over 300 months.

 Petitioner also seeks relief under USSG 1B1.13(b)(3)(C) for his mother:

 (C)  The incapacitation of the defendant's parent when the defendant
 would be the only available caregiver for the parent.

see attached Affidavit from his mother.

AND

 Just as importantly, Petitioner also claims USSG 1B1.13(b)(1)(C)

 (1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT.
 (C) The defendant is suffering from a medical condition that requires
 longterm or specialized medical care that is not being provided and
 without which the defendant is at risk of serious deterioration in
 health or death.


 <u>USSG 1B1.3(b)(6)</u>

 "If a defendant received an unusually long sentence ..." "... a change in

law ... may be considered ... only where such change would produce a gross

disparity ...."

 The Supreme Court decision in RUAN/KAHN 142 S. Ct. 2370 (June 27, 2022)

Held: Section 841's "knowingly or intentionally" mens rea applies to the statute's "except as authorized" clause. Once a defendant meets the burden of producing evidence that his or her conduct was "authorized," the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner. Pp. 4 16.

*It was authorized.*

(a) Criminal law generally seeks to punish conscious wrongdoing. Thus, when interpreting criminal statutes, the Court "start[s] from a longstanding presumption . . . that Congress intends to require a defendant to possess a culpable mental state." Rehaif v. United States, 588 U. S. __, __. This culpable mental state, known as scienter, refers to the degree of knowledge necessary to make a person criminally responsible for his or her acts. See ibid. The presumption of scienter applies even when a statute does not include a scienter provision, and when a statute does "includ[e] a general scienter provision," "the presumption applies with equal or greater force" to the scope of that provision. Ibid. The Court has accordingly held that a word such as "knowingly" modifies not only the words directly following it, but also those other statutory terms that "separate wrongful from innocent acts." Id., at __.

Here, 841 contains a general scienter provision¬ "knowingly or intentionally." And in 841 prosecutions, authorization plays a "crucial" role in separating innocent conduct from wrongful conduct. United States v. X-Citement Video, Inc., 513 U. S. 64, 73. Moreover, the regulatory language defining an authorized prescription is "ambiguous" and "open to varying constructions," Gonzales v. Oregon, 546 U. S. 243, 258, meaning that prohibited conduct (issuing invalid prescriptions) is "often difficult to distinguish" from acceptable conduct (issuing valid prescriptions). United States v. United States Gypsum Co., 438 U. S. 422, 441. A strong scienter requirement helps reduce the risk of "over-deterrence," i.e., punishing conduct that lies close to, but on the permissible side of, the criminal line. Ibid.

Held that "841 contains a general scienter provision "knowingly or intentionally." This is a high mens rea standard. "Good Faith," "objectively," "reasonable," or "honest effort" are not acceptable. It is the mental state of the defendant, not an "objective" standard but instead subjective. In this case, RUAN/KAHN, the essential element of the high mens rea was omitted. Conversely, the mens rea was mis-stated entirely in O'Brien's jury instructions. Where the jury was told they "must follow the law" p5 and that "knowingly" did not mean O'Brien knew he was committing a crime, and "intentionally" did not mean O'Brien was trying to violate the law. RUAN/KAHN says they do. There is no doubt.

O'Brien's jury instructions:

3

```
20          TO "ACT KNOWINGLY," AS THE OFFENSE

21   CHARGED, MEANS THAT THE DEFENDANT WAS CONSCIOUS AND

22   AWARE THAT HE WAS ENGAGED IN AN ACT CHARGED AND KNEW

23   OF THE SURROUNDING FACTS AND CIRCUMSTANCES THAT

24   MAKES OUT THE OFFENSE.

25          "KNOWINGLY" DOES NOT REQUIRE THAT A

1    DEFENDANT KNEW THAT THE ACTS CHARGED AND SURROUNDING

2    FACTS AMOUNT TO A CRIME.   Yes, here it does.  per Ruan

3          TO "ACT INTENTIONALLY," AS USED IN THE

4    OFFENSE CHARGED, MEANS TO ACT DELIBERATELY AND NOT

5    BY ACCIDENT.  "INTENTIONALLY" DOES NOT REQUIRE THAT

6    A DEFENDANT INTENDED TO VIOLATE THE LAW.   Yes, here it does
                                                    per Ruan
```

If Petitioner had the benefit of RUAN/KAHN being "Retroactive on collateral review," he'd already be home.  But since trial was in 2016, Petitioner has no vehicle to come in front of the trial Court and have this case declared a mistrial.

The Tenth Circuit Court of Appeals held in Kahn's appeal 58 F.4th 1308; 2023 U.S. App. LEXIS 2719

Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that the jury instructions issued in Dr. Kahn's trial incorrectly stated the mens rea requirement of § 841(a) and, further, that such error was not harmless beyond a reasonable doubt. This prejudicial error infected all of Dr. Kahn's convictions. Therefore, we VACATE Dr. Kahn's convictions on all counts and REMAND for new trial.

Specifically, their decision on the inappropriate omitted jury instructions

It is well-established that the burden of proving harmless error is on the government. The general test for harmless error requires that the government prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. In the context of jury instructions that omit-rather than misstate-an element, courts have invoked a passage of Neder that imposes additional requirements. Under that test, the government must prove beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error.

and remember, O'Brien's jury instructions were not omitted but mis-stated.

> "Knowingly" does not require that a defendant knew that the acts charged and surrounding facts amount to a crime.
> To "act intentionally," as used in the offense charged, means to act deliberately and not by accident. "Intentionally" does not require that a defendant intended to violate the law.

This is much more damning, both a 5th and 6th Amendment violation.

DISTRIBUTION RESULTING IN DEATH

Joseph Ennis treated with multiple physicians for a sever car accident. He was in chronic pain, and treated with narcotics. He overdosed, by taking 7 to 10 times THE PRESCRIBED AMOUNT, a few weeks before Christmas. One of the drugs, a non-narcotic Flexeril (Cyclobenzaprine) was involved. The Supreme Court case BURRAGE would null any conviction, since the narcotics (alone) did not cause the death. The fact that the pathologist stated "No, you didn't cause the death", and that the pathologist, and the blood work, confirm that the patient took an excessive amount of medication only further shows that O'Brien was not to blame. Ennis had a sever injury. Ennis was prescribed the medications. These prescriptions were filled by a legitimate pharmacy. Ennis took them for years. Everything is fully documented in the chart. AT TRIAL, the gov't stated that these prescription were NOT LEGITIMATE. The RUAN case states otherwise. This "death case" tainted the jury. It should never had been brought forward. The chilling effect it had in the Philadelphia area was noted immediately. 7 Physicians "retired"; ALL physicians stopped writing narcotics; and the heroin/fentanyl epidemic raged on. Just this one issue in the trial is more then enough to declare a mistrial, with the RUAN substantive law change.

Again, the prescriptions were written for the accident. The patient had MRI findings, was seen by specialists, and every narcotic prescription was written for "legitimate medical reason" by a licensed physician. The fact that Thomas would not write the meds is nothing more then his view. The fact that the pathologist, who's specialty is the crux of this issue, found that the patient died from Cyclobenzaprine, oxycodone, and methadone IS significant. All 3 were needed to kill the patient. All 3 were taken way above (7-10 times) prescribed doses. This is all documented in the 2255.

To clear up a point medically: oxycodone is short acting. Methadone is long acting. Both are narcotic. You use short mixed with long acting for chronic pain patients. It is the proper mix. Cyclobenzaprine is a muscle relaxer.

The treatment of Ennis was NOT "outside the course of professional practice". It is exactly what O'Brien did for 20 years. Idiosyncratic View. There was a "legitimate medical purpose". The record keeping, over the course of years, was exactly to standard per the State and DEA. The comments the gov't put forward on page 10 are lies.

O'Brien did not "knowingly" or "intentionally" prescribe medication so that Ennis would overdose and kill himself. The scienter requirement for mens rea, because of the RUAN Court ruling, can not be met. This "death case" tainted the trial and jury. A mis-trial needs to be declared to "cure" this error.



O'BRIEN'S JURY INSTRUCTIONS

```
18            THE LAW PROVIDES THAT WHATEVER -- THAT

19   WHENEVER DEATH IS A CONSEQUENCE OF A VICTIM'S USE OF

20   CONTROLLED SUBSTANCE THAT WAS DISTRIBUTED OR

21   DISPENSED BY THE DEFENDANT, A MORE SERIOUS OFFENSE

22   IS COMMITTED REGARDLESS OF WHETHER THE DEFENDANT

23   KNEW OR SHOULD HAVE KNOWN THAT DEATH RESULT.

24            THERE IS NO REQUIREMENT THAT DEATH

25   RESULTING FROM THE USE OF CONTROLLED SUBSTANCE WAS A
```

## GOOD FAITH AND IDIOSYNCRATIC VIEW

From the Supreme Court in <u>Ruan</u>;

(d)  The Court of Appeals in both cases evaluated the jury instructions relating to mens rea under an incorrect understanding of 841's scienter requirements.

O'Brien has the exact same issue, "On Point." His jury instructions have the exact same flaws that are noted in <u>Ruan</u>. The "strong" scienter requirement, for mens rea, is absolutely negated with the jury instruction that "Knowingly" or "Intentionally" means that O'Brien didn't know it was a crime, or was violating the law.  That is exactly opposite of what the Supreme Court said. The government needed to prove that O'Brien acted, knowing it was a crime, knowing he violated the law.  The jury instructions even state:

"...and that Dr. O'Brien consciously used deliberate efforts to avoid knowing about the existence of the fact ...."

which is another attempt by the government to avoid the strong scienter requirement.  So the government in <u>Ruan</u> argued that they "couldn't know the doctor's mind" but in O'Brien's jury instructions ... they'd know that he "deliberately" had willful blindness.  You can't have it both ways.  The Supreme Court made it ridiculously clear:

"But 841 uses the words 'knowingly or intentionally,' not 'good faith,' 'objectively,' 'reasonable,' or 'honest effort.'  And the Government's standard would turn a defendant's criminal liability on the mental state of a hypothetical 'reasonable' doctor, rather than on the mental state of the defendant himself or herself.  The Court has rejected analogous suggestions in other criminal contexts.  See Elonis v. United States, 575 U.S. 723.  And the Government is wrong to assert that the Court effectively endorsed its honest-effort standard in United States v. Moore, 423 U.S. 122, as that case did not address mens rea at all.  Nor does United States v. Yermian, 468 U.S. 63, support the Government here, as that case dealt with a jurisdictional clause, to which the presumption of scienter does not apply.
Finally, the Government argues that requiring it to prove that a doctor knowingly or intentionally acted not "as authorized" will allow bad-apple doctors to escape liability by claiming idiosyncratic views about their prescribing authority.  But the Court has often rejected this kind of argument, see, e.g., Rehaif, 588 U.S., at, and does so here again."

7

O'Brien's jury instruction on Good Faith:

1          IN DETERMINING WHETHER DR. O'BRIEN

2     ACTED IN GOOD FAITH IN THE COURSE OF MEDICAL

3     PRACTICE, YOU MAY CONSIDER ALL OF THE EVIDENCE IN

4     THIS CASE WHICH RELATES TO THAT CONDUCT.  IF YOU

5     FIND BEYOND A REASONABLE DOUBT THAT DR. O'BRIEN'S

6     CONDUCT AS CHARGED IN COUNTS 3 THROUGH 124 OF THE

7     INDICTMENT WAS NOT IN GOOD FAITH AND WAS NOT IN THE

8     USUAL COURSE OF MEDICAL PRACTICE, THEN YOU MUST

9     CONVICT DR. O'BRIEN OF THESE CHARGES.

10          ON THE OTHER HAND, IF YOU FIND THAT

11    O'BRIEN'S CONDUCT AS CHARGED IN COUNTS 3 THROUGH 124

12    OF THE INDICTMENTS WAS IN GOOD FAITH AND WAS IN THE

13    USUAL COURSE OF PROFESSIONAL MEDICAL PRACTICE, THEN

14    YOU MUST ACQUIT O'BRIEN OF ALL THESE CHARGES.

p57

## WILLFUL BLINDNESS

The government, at trial, asked for and received a "Willful Blindness"
instruction.  This mis-states the high mens rea requirement from RUAN/KAHN.
"High probability" is not enough.  "Deliberately avoided knowing about it" is
inconsistent with the trial testimony that 42 patients were "released" for
"fear" of illegal use of narcotics.  With all of the confusing jury
instructions given, and the mis-statement of the high mens rea standard, this
jury instruction also would vacate all the drug convictions, including the
death and both conspiracies and money laundering.

8

O'Brien's jury instruction on Willful Blindness:

1    PROBABILITY THAT THIS FACT EXISTED, AND THAT

2    DR. O'BRIEN CONSCIOUSLY USED DELIBERATE EFFORTS TO

3    AVOID KNOWING ABOUT THE EXISTENCE OF THIS FACT.

4            IF YOU FIND THAT DR. O'BRIEN ACTUALLY

5    BELIEVED THAT HE WAS DISTRIBUTING OR DISPENSING

6    THESE CONTROLLED SUBSTANCES IN THE USUAL COURSE OF

7    PROFESSIONAL PRACTICE FOR LEGITIMATE MEDICAL

8    PURPOSES, THEN YOU CANNOT FIND DR. O'BRIEN GUILTY

9    BASED ON THESE -- THIS WILLFUL BLINDNESS.

4            YOU MUST FIND THAT DR. O'BRIEN HIMSELF

5    SUBJECTIVELY BELIEVED THAT THERE WAS A HIGH

6    PROBABILITY OF THE EXISTENCE OF THE FACT THAT HE WAS

7    DISTRIBUTING OR DISPENSING A CONTROLLED SUBSTANCE

8    OUTSIDE THE USUAL COURSE OF PROFESSIONAL PRACTICE OR

9    NOT FOR A LEGITIMATE MEDICAL PURPOSE, DELIBERATELY

10   AVOIDED KNOWING ABOUT IT AND DID NOT ACTUALLY

11   BELIEVE THAT IT EXISTED -- THAT IT DID NOT EXIST.

## CONCLUSION
## AND RELIEF REQUESTED

O'Brien has served over 10 years on a 30 year sentence.  With the changes
to the USSG, as of November 1, O'Brien has "extraordinary and compelling"
reasons for Compassionate Release per section 1B1.13(b)(6).

9

The Supreme Court ruling in RUAN/KAHN, 142 S. Ct. 2370 (June 27, 2022),
held:  Section 841's "knowingly or intentionally" mens rea applies to the
statute's "except as authorized" clause.  see R1, R2.  O'Brien, as a
licensed physician, was authorized to distribute and dispense narcotic
medication.  The government in multiple circuits and jurisdictions, admits
that this Supreme Court ruling is a "substantive change in law."

The "Good Faith" jury instruction in RUAN/KAHN omitted the proper mens
rea.  see R1, R2.  But in O'Brien's jury instructions, the Court mis-stated
the mens rea.  Where "knowingly" does not require that a defendant knew that
the acts charged and surrounding facts amount to a crime.  To "act intentionally,"
as used in the offense charged, means to act deliberately and not be accident.
"Intentionally" does not require that a defendant intended to violate the law.
see J-1 p 47-48.  This is obviously directly opposite to the "substantive
change in law" heralded by RUAN/KAHN.

United States v. Kahn in the U.S. Court of Appeals for the Tenth Circuit,
58 F.4th 1308, 2023 U.S. App. LEXIS 2719 No. 19-8054 Feb 3, 2023, then gave
their ruling, noting that Kahn's jury instructions "omitted" an element of the
crime in question.  Omitted an essential element they concluded this was
"plain error" not harmless error.  "This prejudicial error infected all of
Dr. Kahn's convictions."  "We determine that each of Dr. Kahn's convictions
was impacted by erroneous instructions in a way that prejudiced him ..."

O'Brien's convictions for:  Death from narcotics; dispensing medications;
conspiracy # 1; conspiracy # 2; and money laundering all are "impacted" from
the mis-stated jury instructions.  The government repeatedly stated at trial
that they "only had circumstantial evidence."  The government's witnesses all
stated that "If O'Brien knew he threw you out."  The government then asked for
a "Willful Blindess" instruction.  So the jury was asked that O'Brien "didn't

10

need" to know or intentionally break the law, but he knew to be "Willfully Blind." Makes no sense, never addressed the high mens rea standard, and would be declared a mistrial, and O'Brien released, if not for "jurisdictional" issues. No Court will address this blatant misjustice, since RUAN/KAHN.

With this Compassionate Release motion, this Court can now release O'Brien. In arguendo: even if the only remaining convictions stand: 1) lying under oath, and 2) Bankruptcy Fraud, then O'Brien has served the 60 months for each (run concurrently) and the 3 years probation.

The medical issues included will be easily addressed and corrected once Petitioner is released. O'Brien's 83 year old mother, also noted in this petition, needs someone to care for her. This too is an adequate reason for release.

Of note, Petitioner has completed, and taught, multiple courses while incarcerated. He completed Vocational Training in Culinary Arts, attained a Serve Safe certificate, and has taught GED classes. He has "low to none" recidivism rate, and will again be a valuable asset to the community once released. O'Brien should have never been indicted, convicted, nor done 10 years on a 30 year sentence. Under this petition, this Court can release O'Brien without vacating the convictions. Petitioner asks for Compassionate Release immediately.

The Warden here at FCI Memphis was given this motion, with request for Compassionate Release on _OCToBER  6,_ 2023. There has been no response in 30 days. See attached email chain.

When released, I will be living at:

31 Shadybrook Drive, Langhorne PA 19047 with my mother.
As a fully trained physician and CEO, job opportunities are plentiful. I've previously turned down several positions in Hospital Management. Any medical

11

needs I may have will be easily addressed, once released.

I do not request for an attorney to be assigned to help me.  I have been declared indigent by this Court and the Third Circuit Court of Appeals.

For the record, I've attached the 10th Cir. opinion on KAHN (K1 - K4); My Jury Instructions (J1, J2); the Supreme Court's opinion in RUAN/KAHN (R1, R2); an Affidavit from Mom; and 2 email chains for my medical issues.


This motions is Respectfully Submitted this _seventh_ day of _November_, 2023.

11/7/23

William O'Brien

# Marie O'Brien

**31 Shady Brook Drive**
**Langhorne, PA 19047**
**Telephone No.: (215) 579-7999**
**MarieOBrien05@Comcast.net**

## AFFIDAVIT

September 22, 2023

To Whom It May Concern:

My name is Marie O'Brien. I am 83 years old and live alone. My home is situated north of Philadelphia in Bucks County, PA.

My late husband of 49 years, Bill, passed away on November 12, 2013. We have three children: Billy is in Federal prison; David lives in Mason, Ohio; Nancy lives in Cranbury, NJ.

My medical conditions include hypertension, heart disease, severe arthritis in my back and right shoulder. I have had brain surgery for blood on my brain. Since then, my balance is , I am under the care of Drs. Belletieri and Fischer at Dedicated Doctors Phone #215-633-1750.

Two of my children, David and Nancy, live out of state. When Billy gets released, or is granted house arrest, he will live here and be my caregiver. I need him here to help me. I am asking he be granted Compassionate Release.

Your Honor, I was there for Billy's trial. My son should never have been convicted. With the Supreme Court's ruling in RUAN/KHAN (June 2022, my son would never be found guilty today. He's served 10 years, with good time, on a sentence of 5 years when discounting all the drug charges

Please grant Billy's petition for Compassionate Release.

Sincerely,

*Marie O'Brien*
Marie O'Brien

9/22/23
'Date

Sworn to and subscribed before me
this 22nd day of September 20 23.

*Tami L Koslosky*

Commonwealth of Pennsylvania - Notary Seal
TAMI L. KOSLOSKY, Notary Public
Philadelphia County
My Commission Expires December 7, 2024
Commission Number 1211163

Mom

UNITED STATES OF AMERICA, Plaintiff - Appellee, v. SHAKEEL KAHN, Defendant - Appellant.
UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
58 F.4th 1308; 2023 U.S. App. LEXIS 2719
No. 19-8054
February 3, 2023, Filed

**OVERVIEW:** HOLDINGS: [1]-The instructions given in defendant's trial did not correctly state the mens rea requirement of 21 U.S.C.S. § 841 because they improperly interjected a good faith exception that lowered the government's burden to showing only that defendant's behavior was objectively unauthorized-not that he intended to act without authorization; because the issue of defendant's intent was contested during trial, and because the government did not establish beyond a reasonable doubt that the jury determined that defendant knowingly or intentionally acted not "as authorized," the instructions were not harmless error.

*NEVER ACTED S AUTHORIZATION*

The purpose of jury instructions is to give jurors the correct principles of law applicable to the facts so that they can reach a correct conclusion as to each element of an offense according to the law and the evidence. However, even when the district court fails to include an element of the crime in the instruction (including a mens rea element), the appellate court applies the harmless error rule, asking whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. The harmless error rule also applies where an instruction was given incorrectly. When applying the harmless error rule, the appellate court must determine whether the guilty verdict actually rendered in this trial was surely unattributable to the alleged error, -not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered. That must be so, because to hypothesize a guilty verdict that was never in fact rendered-no matter how inescapable the findings to support that verdict might be-would violate the jury-trial guarantee.

It is well-established that the burden of proving harmless error is on the government. The general test for harmless error requires that the government prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. In the context of jury instructions that omit-rather than misstate-an element, courts have invoked a passage of Neder that imposes additional requirements. Under that test, the government must prove beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error.

Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that the jury instructions issued in Dr. Kahn's trial incorrectly stated the mens rea requirement of § 841(a) and, further, that such error was not harmless beyond a reasonable doubt. This prejudicial error infected all of Dr. Kahn's convictions. Therefore, we VACATE Dr. Kahn's convictions on all counts and REMAND for new trial.



K1

The Supreme Court rejected the government's argument that, "once a defendant meets his or her burden of production, the Government can convict by proving beyond a reasonable doubt that [the defendant] did not even make an objectively reasonable attempt to ascertain and act within the bounds of professional medicine." *Id.* at 2381 (internal quotation marks and citation omitted). The Court emphasized that § 841(a) does not contain a "good faith," "objective," "reasonable," or "honest effort" standard, and 'courts cannot read such a standard into the statute. *Id.* The government must prove that a "defendant knew or intended that his or her conduct was unauthorized"-it cannot rely on comparison to the good faith efforts or mental state of "a hypothetical 'reasonable' doctor." *Id.* at 2381-82.

Further, the Supreme Court ruled that, to establish mens rea, it is insufficient for the government to prove that a defendant acted without "a legitimate medical purpose" or outside the "usual course" of generally recognized "professional practice." ***Ruan***, 142 S. Ct. at 2382; *see* 21 C.F.R. § 1306.04. Proof that a defendant did so is "circumstantial evidence" that may be used to prove knowledge of a lack of authorization. ***Ruan***, 142 S. Ct. at 2382. Certainly, "the more{2023 U.S. App. LEXIS 10} unreasonable a defendant's asserted beliefs or misunderstandings are, especially as measured against objective criteria, the more likely the jury . . . will find that the Government has carried its burden of proving knowledge." *Id.* (internal quotation marks and citation omitted). But, in order to convict a defendant, the government must prove that the defendant "knew or intended that his or her conduct was unauthorized." *Id.; see also United States v. Fabode*, No. 21-1491, 2022 U.S. App. LEXIS 31186, 2022 WL 16825408, at *6 (6th Cir. Nov. 8, 2022)ᶦ

First, ***Ruan*** expressly disallows conviction under § 841(a)(1) for behavior that is only objectively unauthorized. The government must prove that a defendant "knowingly or intentionally acted in an unauthorized manner." ***Ruan***, 142 S. Ct. at 2376.

Second, ***Ruan*** treats the two criteria in § 1306.04(a) not as distinct bases to support a conviction, but as "reference to objective criteria" that may serve as circumstantial evidence of a defendant's subjective intent to act in an unauthorized manner. *Id.* at 2382; *see also Id.* at 2377 ("[T]he regulatory language defining an authorized prescription is . . . ambiguous, written in generalit[ies], susceptible to more precise definition and open to varying constructions." (internal quotation marks and citations omitted)). Under § 841(a)(1), the government always has the burden of "proving that{2023 U.S. App. LEXIS 14} a defendant knew or intended that his or her conduct was unauthorized." *Id.* at 2382.4 Accordingly, the jury instructions were erroneous because they allowed the jury to convict Dr. Kahn after concluding either that Dr. Kahn subjectively knew a prescription was issued not for a legitimate medical purpose, or that he issued a prescription that was objectively not in the usual course of professional practice. Both approaches run counter to ***Ruan***.

The good faith exception's reliance on terms like "reasonable physician" and "should believe" impose an objective standard and are exactly the type of language that the Supreme Court stated is impermissible. ***Ruan***, 142 S. Ct. at 2381 ("The Government's ['objectively reasonable good-faith effort'] standard would turn a defendant's criminal liability on the mental state of a hypothetical 'reasonable' doctor, not on the mental state of the defendant himself or herself."). Section 841(a) does not "use[] words such as 'good faith,' 'objectively,' 'reasonable,' or 'honest effort,'" and a district court cannot insert them into the jury instructions. *Id.* Further, the instruction's use of the word "attempt" is equally precarious.{2023 U.S. App. LEXIS 16} The question to be posed to a jury is whether a physician was subjectively intending to act in a way that he believed was unauthorized-not whether he was attempting to act in a way that a "reasonable physician should believe" was authorized or unauthorized. *See* Aplt. App., Vol. I at 239. Again, "[t]he Government . . . [must] prove knowledge of a lack of authorization." ***Ruan***, 142 S. Ct. at 2382.

K-2

The purpose of jury instructions is to give jurors the correct principles of law applicable to the facts so that they can reach a correct conclusion as to each element of an offense according to the law and the evidence. However, "[e]ven when the district court fails to include an element of the crime in the instruction (including a mens rea element), we . . . apply the harmless error rule, asking whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Little*, 829 F.3d at 1183 (quoting *United States v. Sorensen*, 801 F.3d 1217, 1229 (10th Cir. 2015)). The harmless error rule also applies where an instruction was given incorrectly. *See, e.g., United States v. Benvie*, 18 F.4th 665, 670 (10th Cir. 2021). When applying the harmless error rule, "we must determine 'whether the guilty{**2023 U.S. App. LEXIS 18**} verdict actually rendered in *this* trial was surely unattributable to the [alleged] error,'" *United States v. Mullikin*, 758 F.3d 1209, 1211 (10th Cir. 2014) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993)-not "whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered," *Sullivan*, 508 U.S. at 279. "That must be so, because to hypothesize a guilty verdict that was never in fact rendered-no matter how inescapable the findings to support that verdict might be-would violate the jury-trial guarantee." *Id.*

"It is well-established that the burden of proving harmless error is on the government." *United States v. Holly*, 488 F.3d 1298, 1307 (10th Cir. 2007). Again, the general test for harmless error requires that the government prove "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Luke-Sanchez*, 483 F.3d 703, 705 (10th Cir. 2007) (citing *Neder*, 527 U.S. at 15) (applying this test to "[a] jury instruction that improperly describe[d] an element of the charged crime"); *see also Neder*, 527 U.S. at 11 (extending harmless error analysis to instructions that omit an element; "[o]mitting an element can easily be analogized to improperly instructing the jury on the element, an error that is subject to harmless-error analysis."). In the context of jury instructions that omit-rather than misstate-an element, we have sometimes invoked a passage of *Neder* that imposes additional requirements.{**2023 U.S. App. LEXIS 19**} Under that test, the government must prove "beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Neder*, 527 U.S. at 11. We have previously declined to "parse out the proper formulation of the harmless-error standard for direct review under *Neder*," *United States v. Schneider*, 665 F. App'x 668, 672 (10th Cir. 2016),5 and we may continue to avoid doing so here. Under either iteration of the test for harmless error, the government has not shown beyond a reasonable doubt that the instructional error was harmless.

As we stated in our prior opinion, the jury instructions given in Dr. Kahn's trial meant that the jury "could only convict Dr. Kahn if it found, beyond a reasonable doubt, that Dr. Kahn failed to even attempt or make some honest effort to apply the appropriate standard{2023 U.S. App. LEXIS 23} of care." *Kahn*, 989 F.3d at 826. The instructions provided in Dr. Kahn's trial did not require the jury to decide whether Dr. Kahn knowingly or intentionally acted without authorization.

While proof that Dr. Kahn failed to try to conform his prescribing practices to the standards of his profession may "go far to show, circumstantially at least, that [Dr. Kahn] actually knew he was acting outside the standards of his profession," Aple. Supp. Br. at 6, that evidence does not fully satisfy the requirement that the government prove that Dr. Kahn "knowingly or intentionally acted in an unauthorized manner," *Ruan*, 142 S. Ct. at 2376. It is not enough that the jury found that Dr. Kahn failed to attempt or make some honest effort to apply the appropriate standard of care, nor is it enough that the jury accepted that Dr. Kahn subjectively knew a prescription was issued not for a legitimate medical purpose, and/or issued a prescription that was objectively not in the usual course of professional practice.

To allow conviction where the government proved only that Dr. Kahn failed to attempt or make some honest effort to apply the appropriate standard of care does not require any finding by the jury that Dr. Kahn intended to act not "as authorized."{2023 U.S. App. LEXIS 24} The government must show that the jury necessarily made a finding that Dr. Kahn knowingly or intentionally acted not "as authorized." As it stands, the jury in Dr. Kahn's case was provided incorrect instructions, and that error went directly to the heart of the trial: Dr. Kahn's intent. The instructions allowed conviction if the jury concluded "that Dr. Kahn failed to even attempt or make some honest effort to apply the appropriate standard of care." *Kahn*, 989 F.3d at 826. Based on the jury instructions, as they were written and presented to the jury, the jury was not required to find that Dr. Kahn intended to or knowingly did act not "as authorized." The jury did not make the required mens rea finding, and "to hypothesize a guilty verdict that was never in fact rendered-no matter how inescapable the findings to support that verdict might be-would violate the jury-trial guarantee." *Sullivan*, 508 U.S. at 279.

## D. Dr. Kahn's Remaining Convictions

Finally, we discuss which of the counts of conviction, specifically, were affected by erroneous instructions. We determine that *each* of Dr. Kahn's convictions was impacted by erroneous{2023 U.S. App. LEXIS 26} instructions in a way that prejudiced him, and, therefore, we remand with directions to vacate his convictions on all counts.

For each § 841(a)(1) charge on which Dr. Kahn was convicted, the instructions erroneously articulated the mens rea requirement in light of *Ruan*. As regards the remaining charges, the instructions pertaining to those charges are likewise predicated, at least in part, on one or more of the erroneous § 841(a)(1) instructions. Accordingly, we conclude that Dr. Kahn's convictions as to each count must be vacated.

K-4

20     TO "ACT KNOWINGLY," AS THE OFFENSE

21     CHARGED, MEANS THAT THE DEFENDANT WAS CONSCIOUS AND

22     AWARE THAT HE WAS ENGAGED IN AN ACT CHARGED AND KNEW

23     OF THE SURROUNDING FACTS AND CIRCUMSTANCES THAT

24     MAKES OUT THE OFFENSE.

25          "KNOWINGLY" DOES NOT REQUIRE THAT A

*p47*

1     DEFENDANT KNEW THAT THE ACTS CHARGED AND SURROUNDING

2     FACTS AMOUNT TO A CRIME.   *yes, here it does. per Ryan*

3          TO "ACT INTENTIONALLY," AS USED IN THE

4     OFFENSE CHARGED, MEANS TO ACT DELIBERATELY AND NOT

*p48*

5     BY ACCIDENT.  "INTENTIONALLY" DOES NOT REQUIRE THAT

6     A DEFENDANT INTENDED TO VIOLATE THE LAW.  *yes here it does*
                                               *per Ryan*

57

1          IN DETERMINING WHETHER DR. O'BRIEN

2     ACTED IN GOOD FAITH IN THE COURSE OF MEDICAL

3     PRACTICE, YOU MAY CONSIDER ALL OF THE EVIDENCE IN

4     THIS CASE WHICH RELATES TO THAT CONDUCT.  IF YOU

*p57*

5     FIND BEYOND A REASONABLE DOUBT THAT DR. O'BRIEN'S

6     CONDUCT AS CHARGED IN COUNTS 3 THROUGH 124 OF THE

7     INDICTMENT WAS NOT IN GOOD FAITH AND WAS NOT IN THE

8     USUAL COURSE OF MEDICAL PRACTICE, THEN YOU MUST

9     CONVICT DR. O'BRIEN OF THESE CHARGES.

10          ON THE OTHER HAND, IF YOU FIND THAT

11    O'BRIEN'S CONDUCT AS CHARGED IN COUNTS 3 THROUGH 124

12    OF THE INDICTMENTS WAS IN GOOD FAITH AND WAS IN THE

13    USUAL COURSE OF PROFESSIONAL MEDICAL PRACTICE, THEN

14    YOU MUST ACQUIT O'BRIEN OF ALL THESE CHARGES.

1   PROBABILITY THAT THIS FACT EXISTED, AND THAT

2   DR. O'BRIEN CONSCIOUSLY USED DELIBERATE EFFORTS TO

3   AVOID KNOWING ABOUT THE EXISTENCE OF THIS FACT.

4            IF YOU FIND THAT DR. O'BRIEN ACTUALLY

5   BELIEVED THAT HE WAS DISTRIBUTING OR DISPENSING

6   THESE CONTROLLED SUBSTANCES IN THE USUAL COURSE OF

7   PROFESSIONAL PRACTICE FOR LEGITIMATE MEDICAL

8   PURPOSES, THEN YOU CANNOT FIND DR. O'BRIEN GUILTY

9   BASED ON THESE -- THIS WILLFUL BLINDNESS.

4            YOU MUST FIND THAT DR. O'BRIEN HIMSELF

5   SUBJECTIVELY BELIEVED THAT THERE WAS A HIGH

6   PROBABILITY OF THE EXISTENCE OF THE FACT THAT HE WAS

7   DISTRIBUTING OR DISPENSING A CONTROLLED SUBSTANCE

8   OUTSIDE THE USUAL COURSE OF PROFESSIONAL PRACTICE OR

9   NOT FOR A LEGITIMATE MEDICAL PURPOSE, DELIBERATELY

10  AVOIDED KNOWING ABOUT IT AND DID NOT ACTUALLY

11  BELIEVE THAT IT EXISTED -- THAT IT DID NOT EXIST.

18           THE LAW PROVIDES THAT WHATEVER --  THAT

19  WHENEVER DEATH IS A CONSEQUENCE OF A VICTIM'S USE OF

20  CONTROLLED SUBSTANCE THAT WAS DISTRIBUTED OR

21  DISPENSED BY THE DEFENDANT, A MORE SERIOUS OFFENSE

22  IS COMMITTED REGARDLESS OF WHETHER THE DEFENDANT

23  KNEW OR SHOULD HAVE KNOWN THAT DEATH RESULT.

24           THERE IS NO REQUIREMENT THAT DEATH

25  RESULTING FROM THE USE OF CONTROLLED SUBSTANCE WAS A

*KUAN / KAHN*

*142 S. Ct 2370*

*JUNE 27, 2022*

XIULU RUAN v. UNITED STATES

No. 20-1410

Petitioners Xiulu Ruan and Shakeel Kahn are medical doctors licensed to prescribe controlled substances. Each was tried for violating 21 U.S.C. 841, which makes it a federal crime, "[e]xcept as authorized[,] . . . for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance." A federal regulation authorizes registered doctors to dispense controlled substances via prescription, but only if the prescription is "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 CFR 1306.04(a). At issue in Ruan's and Kahn's trials was the mens rea required to convict under 841 for distributing controlled substances not "as authorized." Ruan and Kahn each contested the jury instructions pertaining to mens rea given at their trials, and each was ultimately convicted under 841 for prescribing in an unauthorized manner. Their convictions were separately affirmed by the Courts of Appeals.

Held: Section 841's "knowingly or intentionally" mens rea applies to the statute's "except as authorized" clause. Once a defendant meets the burden of producing evidence that his or her conduct was "authorized," the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner. Pp. 4 16.

(a) Criminal law generally seeks to punish conscious wrongdoing. Thus, when interpreting criminal statutes, the Court "start[s] from a longstanding presumption . . . that Congress intends to require a defendant to possess a culpable mental state." Rehaif v. United States, 588 U. S. __, __. This culpable mental state, known as scienter, refers to the degree of knowledge necessary to make a person criminally responsible for his or her acts. See ibid. The presumption of scienter applies even when a statute does not include a scienter provision, and when a statute does "includ[e] a general scienter provision," "the presumption applies with equal or greater force" to the scope of that provision. Ibid. The Court has accordingly held that a word such as "knowingly" modifies not only the words directly following it, but also those other statutory terms that "separate wrongful from innocent acts." Id., at __.

Here, 841 contains a general scienter provision¬ "knowingly or intentionally." And in 841 prosecutions, authorization plays a "crucial" role in separating innocent conduct from wrongful conduct. United States v. X-Citement Video, Inc., 513 U. S. 64, 73. Moreover, the regulatory language defining an authorized prescription is "ambiguous" and "open to varying constructions," Gonzales v. Oregon, 546 U. S. 243, 258, meaning that prohibited conduct (issuing invalid prescriptions) is "often difficult to distinguish" from acceptable conduct (issuing valid prescriptions). United States v. United States Gypsum Co., 438 U. S. 422, 441. A strong scienter requirement helps reduce the risk of "over-deterrence," i.e., punishing conduct that lies close to, but on the permissible side of, the criminal line. Ibid.

The statutory provisions at issue here are also not the kind to which the Court has held the presumption of scienter does not apply. Section 841 does not define a regulatory or public welfare offense that carries only minor penalties. Cf. Rehaif, 588 U. S., at __; Staples v. United States, 511 U. S. 600, 618 619. Nor is the "except as authorized" clause a jurisdictional provision. Cf. Rehaif, 588 U. S., at __. Pp. 5 8.

(b) Analogous precedent reinforces the Court's conclusion here. In Liparota v. United States, 471 U. S. 419, United States v. X-Citement Video, 513 U. S. 64, and Rehaif v. United States, 588 U.S. __, the Court interpreted statutes containing a general scienter provision ("knowingly"), and considered what mental state applied to a statutory clause that did not immediately follow the "knowingly" provision. In all three cases, the Court held that "knowingly" modified the statutory clause in question because that clause played a critical role in separating a defendant's wrongful from innocent conduct. See Liparota, 471 U.S., at 426; X-Citement Video, 513 U. S., at 72 73; Rehaif, 588 U. S., at __. As in those cases, the Court today concludes that 841's mens rea applies to the "[e]xcept as authorized" clause, which serves to separate a defendant's wrongful from proper conduct. Pp. 8 9.

*R1*

(c) Neither the Government's nor the concurrence's contrary arguments are convincing. First, the Government and the concurrence correctly note that the statutory clauses in the cases just described set forth elements of an offense. Here, the Government and the concurrence say, 841's "[e]xcept as authorized" clause does not set forth an element of the offense. In support, they point to a separate statutory provision 885. Section 885 says that the Government need not "negative any exemption or exception . . . in any complaint, information, indictment, or other pleading in any trial," and that "the burden of going forward with the evidence with respect to any such exemption or exception shall be upon the person claiming its benefit," not upon the prosecution. But even assuming that lack of authorization is unlike an element in these two ways, 885 has little or nothing to do with scienter requirements. Section 885 simply absolves the Government of having to allege, in an indictment, the inapplicability of every statutory exception in each Controlled Substances Act prosecution. Section 885 also shifts the burden of production but not the burden of persuasion regarding statutory exceptions to the defendant, thereby relieving the Government of having to disprove, at the outset of every prosecution, the inapplicability of all exceptions.

Section 885 thus does not provide a basis for inferring that Congress intended to do away with, or weaken, ordinary and longstanding scienter requirements. At the same time, the factors discussed above  the language of 841; the crucial role authorization plays in distinguishing morally blameworthy conduct from socially necessary conduct; the serious nature of the crime and its penalties; and the vague, highly general regulatory language defining the scope of prescribing authority all support applying normal scienter principles to the "except as authorized" clause. And the Government does not deny that, once a defendant satisfies his burden of production under 885 by invoking the authorization exception, the Government must then prove lack of authorization by satisfying the ordinary criminal law burden of proof beyond a reasonable doubt.
The Government also offers a substitute mens rea standard. Instead of applying the statute's "knowingly or intentionally" language to the authorization clause, the Government instead asserts that the statute implicitly contains an "objectively reasonable good-faith effort" or "objective honest-effort standard." Brief for United States 16 17. But 841 uses the words "knowingly or intentionally," not "good faith," "objectively," "reasonable," or "honest effort." And the Government's standard would turn a defendant's criminal liability on the mental state of a hypothetical "reasonable" doctor, rather than on the mental state of the defendant himself or herself. The Court has rejected analogous suggestions in other criminal contexts. See Elonis v. United States, 575 U. S. 723. And the Government is wrong to assert that the Court effectively endorsed its honest-effort standard in United States v. Moore, 423 U.S. 122, as that case did not address mens rea at all. Nor does United States v. Yermian, 468 U.S. 63, support the Government here, as that case dealt with a jurisdictional clause, to which the presumption of scienter does not apply.

Finally, the Government argues that requiring it to prove that a doctor knowingly or intentionally acted not "as authorized" will allow bad-apple doctors to escape liability by claiming idiosyncratic views about their prescribing authority. But the Court has often rejected this kind of argument, see, e.g., Rehaif, 588 U. S., at , and does so again here. Pp. 9 15.

(d) The Court of Appeals in both cases evaluated the jury instructions relating to mens rea under an incorrect understanding of 841's scienter requirements. On remand, those courts may address whether the instructions complied with the mens rea standard set forth here, as well as whether any instructional error was harmless. P. 15.

966 F. 3d 1101 and 989 F. 3d 806, vacated and remanded.

BREYER, J. delivered the opinion of the Court, in which ROBERTS, C. J., and SOTOMAYOR, KAGAN, GORSUCH, and KAVANAUGH, JJ., joined.  ALITO, J., filed an opinion concurring in the judgment, in which THOMAS, J., joined, and in which BARRETT, J., joined as to Parts I A, I B, and II.

TRULINCS  71915066 - O'BRIEN, WILLIAM J III - Unit: HAF-M-C

--------------------------------------------------------------------------

FROM: 71915066
TO: FCI Health Services
SUBJECT: ***Request to Staff*** O'BRIEN, WILLIAM, Reg# 71915066, HAF-M-C
DATE: 06/07/2023 06:10:04 PM

To: CO FRIEND
Inmate Work Assignment: GED tutor

Mr. Friend,

At dinner this evening, Wednesday June 7th, I was told by CO THORNE that you had discontinued my evening snack bag, as of today.  I was not notified of this, nor have I seen a physician.  I have a degree in Osteopathic Medicine, practiced for 20 years in the Philadelphia area, and am alarmed.  This must be corrected.

I had Gastric Bypass Surgery 9stomach stapled) in 2007, have been in the BOP since 2015, and have always had an evening snack bag due to my medical condition.  This bag is medically prescribed by a physician, as are all of my medications.  I have seen Dr. Adams, who prescribed the snack bag, and PA Underwood, who prescribed the snack bag.  Everything has been going relatively well.

You stopping the medically prescribed "snack bag" without a medical visit, nor valid reason.  Your actions are against the medical orders that are charted.  Since I've been told you are not a physician, I am concerned that this is nothing more then a reaction (negative) to my arguing for my needed medication (retribution?), which includes the chewable multi-vitamin.  Why is a non-physician changing Doctors orders?  I do not believe that is BOP policy.  Every physician I have seen over the last  eight years has given me the needed evening snack bag.  There has been no issue with the Food Service, and things have gone fine since I first came here in October of 2018.  Why you think, as of today, this needed (medically ordered) snack bag be discontinued is concerning, and frankly - plain wrong.

CO Thorne advised me to see you in the AM tomorrow.
                    I will.

CO Thorne stated that he was willing (and happy) to continue to give me the snack bag, once YOU FIX THIS.

Dr. William O'Brien
cc: Warden, Dr. Adams, PA Underwood
-----O'BRIEN, WILLIAM J III on 6/1/2023 10:03 AM wrote:

>

See below.
This is my 3rd attempt at getting my medically needed, and prescribed, medication.
Please help.
-----O'BRIEN, WILLIAM J III on 5/29/2023 6:22 PM wrote:

>

Please refill my chewable multi-vitamin prescription,
and my iron supplements.
then, if you could email me, I'd appreciate it.

  WJO
-----O'BRIEN, WILLIAM J III on 5/28/2023 7:08 AM wrote:

>

To the Pharmacist:
Good Morning,

I'm almost out of my "chewable multi-vitamins" to be taken "two a day".
They should have been up for a refill over 10 days ago.

1 of 5

TRULINCS  71915066 - O'BRIEN, WILLIAM J III - Unit: HAF-M-C

--------------------------------------------------------------------------------

The bottle says that there are (o) refills, but that the prescription can be filled until 4/23/24(?).
I do take 2 a day, everyday, since my gastric bypass surgery in 2007.

This has been an issue previously.

Please refill the medically necessary chewable multi-vitamins at your earliest convenience.
They are needed for my health.
Let me know when I can get them.

Sincerely,
      WJO
-----O'BRIEN, WILLIAM J III on 5/22/2023 12:06 PM wrote:

>

-----O'BRIEN, WILLIAM J III on 4/21/2023 12:47 PM wrote:

>

-----O'BRIEN, WILLIAM J III on 3/7/2023 2:17 PM wrote:

>

Today, March 7th - I attempted to pick up my chewable multi-vitamin.  It was "filled" by the pharmacy on 2/27, per Ms.. Dixon.
She has not received it as of yet.  Last Thursday, 3/2, I was told by CO Bolyard (compound) that my name "was not" on the list,
nor is it on the list today - meaning, there is no prescription for me to pick up.
   Since I ran out of medication a week ago, and this is an ongoing issue, I want to document/memorialize it.  This pharmacy
(BOP) cannot keep up with a simple chewable multi-vitamin, and are putting my health in jeopardy.  The stress from this
ongoing situation (over a year) is unrelenting.  Nothing is done.  No one cares.  AND THEY ARE AWARE OF MY
COMPASSIONATE RELEASE MOTION, which is pending.  The BOP cannot provide simple, basic, care for a patient status
post gastric bypass.  I deserve to be released, minimally to home confinement, for my health and well being.
   I filed a BP 8, 9 ,10, 11 and never receive an answer.  I filed a Compassionate Release, no answer.  This whole thing stinks,
and now I await the courts for some justice.
      WJO
-----O'BRIEN, WILLIAM J III on 2/21/2023 11:53 AM wrote:

>

-----O'BRIEN, WILLIAM J III on 1/9/2023 6:33 AM wrote:

>

...
-----O'BRIEN, WILLIAM J III on 12/16/2022 5:19 PM wrote:

>

Received the chewable multi vitamins today.  60, one twice a day.  But they pulled the same stunt with the Vitamin D, and
Calcium supplements.  The "Head Pharmacist" is changing things, per Ms. Dixon.  This would again be SHIFLET.  This not only
is unacceptable, but against BOP policy and medical policy.  You can't just "stop" giving medically prescribed medicine because
of cost issues, when you're spending millions.  Please.
-----O'BRIEN, WILLIAM J III on 12/6/2022 11:04 AM wrote:

>

Let this serve to memorialize the visit today with Physician Assistant Underwood.  I was being seen for chronic care.  I raised
the issue of the 'chewable multi-vitamins".  She was not aware of this.  The PA called pharmacy, spoke with two people there
and was advised that they no longer have the chewable multi-vitamin.  "BUT" they have had a children's (pediatric) version, so

2 of 5

TRULINCS  71915066 - O'BRIEN, WILLIAM J III - Unit: HAF-M-C

-------------------------------------------------------------------------------------------------

instead of one twice a day, this would be two twice a day.  When asked why this wasn't given to me, the answer (from the pharmacy) was that "it wasn't prescribed (written)".
    Obviously, after multiple emails, a BP-8.9. and 10 AND filing a "compassionate release" for this issue, someone should have responded before this health care visit.  This deliberate indifference to the medical needs of an inmate is not only unacceptable, but is illegal.
    PA Underwood advised me to pick up the prescribed children multi-vitamin next week.  Ms. Dixon (at the pill pick up) should be notified if "it" isn't there, and she is to then communicate with underwood.  I will be trying to pick up the needed multi-vitamin, Doctor Prescribed, Monday the 12th.  Hopefully, this medication will not be withheld, like the other.
-----O'BRIEN, WILLIAM J III on 11/30/2022 3:05 PM wrote:

>

Please help me.
    WJO
-----O'BRIEN, WILLIAM J III on 11/30/2022 3:04 PM wrote:

>

SHIFLET ('head" pharmacist,

I went to pill line today for the needed prescribed chewable vitamins.  CO Dick said I am not on the list.  This issue continues since August.  I am chronic care.  The pharmacy cannot change prescriptions.  YOU are not a prescribing provider.  Please get me what is ordered.  I've been on this for 8 years.  Your not ordering it, because of price, is totally unacceptable and "deliberate indifference" to my medical needs.  This email chain documents all of this.  I am also "cc-ing" the Warden.
Please get me what I am rightfully prescribed, and need, for my chronic health issues.

    WJO
cc: Warden Ray
-----O'BRIEN, WILLIAM J III on 11/26/2022 6:49 PM wrote:

>

As you can see, with the attached, I've been dealing with this issue for months.
I will try to see you at Mainline this week.
The BP-9 got me nowhere.  The 10 was filed, no response.
I still need the prescribed medicine.
Is there anything I can do.
thank You,
    WJO
-----O'BRIEN, WILLIAM J III on 10/31/2022 12:28 PM wrote:

>

Since there has been no response, I will file with the court after the 30 days.
thank you,
    WJO
-----O'BRIEN, WILLIAM J III on 10/4/2022 10:38 AM wrote:

>

The below has been going on for too long.
Please Construe this as a "Compassionate Release" request to "home confinement.
My Mother, Marie O'Brien lives at 31 Shady Brook Drive, Langhorne, PA 19047.  She can be reached at 215-579-7999.
She is 82 and lives alone.  My siblings are out of state, my Father is deceased since 2013.
I need to be released to home confinement, BECAUSE this facility cannot provide the medical treatment prescribed.

I will be filing the BP-9 as noted.

Respectfully Submitted,

3 of 5

TRULINCS   71915066 - O'BRIEN, WILLIAM J III - Unit: HAF-M-C

----------------------------------------------------------------------------------------------------------------------

            WJO
-----O'BRIEN, WILLIAM J III on 10/4/2022 10:35 AM wrote:

>

I'm being denied my prescribed medication.  I already filed the BP-8, I will file the BP-9 this week.
Since I am not being given the medication (that I'm prescribed, and been on for 7+ years), I am requesting compassionate
release for "Extraordinary and Compelling" reason.

Over the "lock down", a Mr. Shiflet (?) came to the cell and explained that "although McKesson (the drug distributor) sent
gummy chewable vitamins, they were being returned because the Pharmacy would not fill out "off formulary" requests.
"We're not filling out all those requests.  You'll just have to wait."

I explained that I had taken the gummy chewable vitamins, several months ago, that were dispensed here.
I explained that I had been out of the chewable vitamins for over a month.
McKesson sent an alternative, but the staff won't file the appropriate paperwork. Instead, my health is risked.  These
pharmacists are not physicians.  Give me the medicine, that was prescribed, THAT YOU HAVE IN HAND.

"You'll just have to wait, like every one else" was Shiflet's reply.

No.  That is unacceptable, and an 8th amendment violation.
Since the BOP cannot treat me properly, for over a month, I am now requesting "Compassionate Release".
This memo serves as my "attachment" for said release.
The Supreme Court has repeatedly stated that if an inmate cannot get proper medical treatment, then they need to be released
from the prison.  This has not changed in 50+ years.

You are withholding my prescribed medicine.  You are doing the same with heart medication, seizure medication, blood
pressure medication, etc. etc...  No... we do not just "have to wait".  This is an obvious Constitutional Violation.  Legal precedent
applies.

All I want is my medication, but now I want to be released.
I await the answer to the BP-9, before I file the BP-10, then the 2241.

       WJO
cc: Warden
-----O'BRIEN, WILLIAM J III on 9/15/2022 3:15 PM wrote:

>

Last Friday, September 9th, I was told that my "chewable multi-vitamin" was "IN" and that I should come back in a week.  Today,
Ms. Dixon advised me to check back in another week.  Apparently, the BOP is short Pharmacists and Techs.  This is
unconscionable.  Medication cannot be withheld for 4-5 weeks.  There are medical ramifications.  Seizure medication, heart
medication, and my own medically necessary prescribed medication is being withheld.  The Supreme Court has always stated
that "IF" the prison cannot provide adequate medical services, then it is an Eighth Amendment Constitutional Violation.  It is
nothing short of "Deliberate Indifference" to continue to withhold medication, week after week, and not address the problem of
having "not enough" Pharmacists, and Techs.

   I await the answer/reply to my BP-8.
-----O'BRIEN, WILLIAM J III on 9/8/2022 6:55 AM wrote:

>

A BP-8 was filed on September 6th.
-----O'BRIEN, WILLIAM J III on 9/2/2022 2:18 PM wrote:

>

Making you aware of the situation.
I will file a BP-8 Tuesday, September 5th, after the holiday.

                                        4 of 5

TRULINCS  71915066 - O'BRIEN, WILLIAM J III - Unit: HAF-M-C

--------------------------------------------------------------------------------

Please help.
-----O'BRIEN, WILLIAM J III on 9/2/2022 2:17 PM wrote:

>

Today I went to pick up my prescribed medication (a chewable multivitamin that is taken twice a day).
I put in for the refill 12 days ago, on August 21st.
Ms. Dixon, who is nothing short of an angel, told me that it isn't available.  It's "back ordered".
I explained that any CVS or Walgreens (or even the local Wal-Mart) would have Flintstone chewables.
"We can't buy them there.  Try back again next week.  Late in the week".
- this is after the "wait 2 weeks" for any medication refills because "we're short a pharmacist".

I underwent gastric bypass surgery in 2007.
I need those vitamins on a daily basis.
I've been taking them for 15 years.
This medication is important to my health.

I will be filing administrative remedies after the holiday.
This is unacceptable.  I am also aware that seizure medication have been withheld from another inmate.  Uncontrolled diabetics
have had their Metformin (an insulin sensitizer) lowered.  All of which are against medical standard of care.
Understandably, the BOP is supposedly "out of money" which explains many of the cost saving changes that are now going on.
Many of the guards have verbalized the same to the inmates.

The Eighth Amendment guards against the prison system withholding physician prescribed (meaning necessary) medication.
That is a Constitutional Violation of my Rights.

I'm asking for my prescribed chewable multi-vitamin.  I am out.
Please fill them as fast as possible and not continue this unacceptable delay.

Respectfully,
         WJO
cc: Warden

TRULINCS 71915066 - O'BRIEN, WILLIAM J III - Unit: MEM-B-A

--------------------------------------------------------------------------------

FROM: 71915066
TO: Warden
SUBJECT: ***Request to Staff*** O'BRIEN, WILLIAM, Reg# 71915066, MEM-B-A
DATE: 10/06/2023 11:13:00 AM          *DTY Compassionate Release given to Warden !*

To: Warden
Inmate Work Assignment: n/a

COMPASSIONATE RELEASE MOTION
Today I spoke with Ms. Jane, I believe she is the unit secretary. I asked her to accept the Compassionate Release Motion
(Warden's copy). She advised me to "put it in the mail box. It'll get there." Inmate Winchester was present.
The Compassionate Release is filed as of today, October 6th.
Thank you for your attention to this matter.
-----O'BRIEN, WILLIAM J III on 10/1/2023 7:57 AM wrote:

>

I had blood drawn, again, on Thursday September 28th.
I am, again, requesting a copy of this blood work AND the previous blood work too.
-----O'BRIEN, WILLIAM J III on 9/21/2023 2:55 PM wrote:

>

The BP-9 was filed today. I am requesting my chewable multi-vitamin, and the "snack bag" to be given at dinner - and brought
back to the unit. You have sent no return email, no response to the BP-8, and have scheduled no appointment for this "chronic
care" issue. This is "Deliberate Indifference", in other words - an Eighth Amendment Violation. Please fix this issue
immediately. All of the records from FCI-Haelton verify the need for the above. All of the records from FCI-Hazelton were
vetted by multiple providers (Physicians and Physician Assistants). All of the records show the need for the requested
chewable vitamins and snack bag over the last eight and a half years in the BOP. There is no question that you are not
following "Standard of Care" nor practicing current "Standard of Care" for a patient status post Gastric Bypass. Withholding the
above needed medical treatment puts my health at risk, is dangerous for me, is causing severe anxiety, and is unacceptable.
-----O'BRIEN, WILLIAM J III on 9/19/2023 11:59 AM wrote:

>

I went by the pharmacy to pick up the iron and Vit. D supplements. The pharmacist said to come back the 22nd for my B12,
which has been ordered. No response from medical for the chewable multivitamins or evening snack bag. I have tried. CO
Monix gave me the BP-9 which I will file tomorrow, including this email chain. Please help me.
-----O'BRIEN, WILLIAM J III on 9/13/2023 7:14 AM wrote:

>

Nothing yet on my B12, or needed chewable multi-vitamin.
Please respond.
-----O'BRIEN, WILLIAM J III on 9/7/2023 10:16 AM wrote:

>

Yesterday, the 6th, I saw CO Boykins at mainline. Explained my issues. Was told to report to sick call today.
Today, sick call was overwhelmed with @ 30 inmates. Was told, after an hour, "everyone will be seen". Another hour later,
Boykins made an announcement that if you weren't on call out, you may have to come back. Another 20 minutes and CO Martz
(a Nurse Practitioner) called me back. Briefly explained that I had a chromic care issue. That "if" I did not already have an
appointment for chronic care, she would put me in for an appointment, and I should watch the call outs.
I am doing everything I can to get the needed prescribed medications. Everything is in my medical charts.
-----O'BRIEN, WILLIAM J III on 8/30/2023 12:37 PM wrote:

>

I need some help here. Everything is in my medical records. I have gotten no response from my emails to Health Services. I

①

TRULINCS  71915066 - O'BRIEN, WILLIAM J III - Unit: MEM-B-A
--------------------------------------------------------------------------------------------

filed a BP-8 today.  Please have your secretary contact them and get me the medically necessary (prescribed by multiple physicians since 2015) treatments.

Thank you
-----O'BRIEN, WILLIAM J III on 8/30/2023 12:35 PM wrote:

>

There has been no response.  Let this serve to memorialize the BP-8 that I am filing today:

3. COMPLAINT: " I had my stomach stapled in 2007.  I do not absorb vitamins properly due to my GASTRIC BYPASS SURGERY.  Been incarcerated since 2015.  I get 2 "chewable" multi-vitamins a day; a B12 shot monthly (on the 21st) and a "snack bag" at dinner - to bring back to the cell: Peanut Butter or cheese, bread, an apple.  I am not receiving this.  Help me.

3. Efforts made to resolve and list staff contacted: "Health/Gill emailed Aug 18th, 22, & 23.  NO RESPONSE.

5. What remedy are you seeking?   "1) A MONTHLY B12 SHOT
                                    2) 2 CHEWABLE MULTI-VITAMINS A DAY
                                    3) AN EVENING "SNACK BAG" (LIKE DIABETIC SNACK
                               All Medically Necessary.  See my chart from Hazelton"

6.  Date returned "8/30/23

cc: Warden
-----O'BRIEN, WILLIAM J III on 8/23/2023 12:15 PM wrote:

>

Please, also, I need a B12 shot.  I was scheduled EVERY 21st of the month, and missed this month.
Also, see attached for the need for a chewable multi-vitamin.
-----O'BRIEN, WILLIAM J III on 8/22/2023 7:08 AM wrote:

>

I need my B12 shot.
Please help.
-----O'BRIEN, WILLIAM J III on 8/18/2023 11:53 AM wrote:

>

Good morning.

I arrived here yesterday August 17th from FCI-Hazelton in West Virginia.
I do not have my needed prescribed medication. Dr. Gill said that "a nurse will call you", and that "You're in the computer".
What I was taking at hazelton did not come with me.

I had my stomach stapled in 2007 (gastric bypass) and
because if this surgery, require:

    2 chewable multi-vitamins each day
    2 iron pills a day
    and a B12 injection monthly - at Hazelton it was on the 21st religiously

Please email me back so:  1) I know you received this; and
                          2) I can receive these needed treatments.

Thank You,
       WJO



## CERTIFICATE OF SERVICE

I, _William O'Brien_ do hereby swear that a true and correct copy of: DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. SECTION 3582 (c)(1)(A)(i) AND REQUEST FOR EXPEDITED RULING

WAS MAILED VIA 1ST CLASS MAIL TO:

CLERK OF COURT
601 MARKET ST.
Phila., PA 19106

U.S. ATTY OFFICE
615 CHESTNUT ST, SUITE 1250
Phila., PA 19106

was "mailed", via First Class Mail, from:

Federal Correctional Institution - Memphis
P.O. Box 34550
Memphis, TN  38134-0550

on _Nov 7, 2023_ (Date)

_____ (signature)

* Mail Box Rule - the date of mailing is considered the "Filing Date"

-> The government will be notified via the court's ECF filing system, since Petitioner is indigent

⇔71915-066⇔
Fci² Memphis
PO BOX 34550
Wm Obrien #71915-066
Memphis, TN 38134-0550
United States





RECEIVED
NOV 13 2023

⇔71915-066⇔
Clerk Of Court
601 Market ST
U.S. District Court
Phila, PA 19106
United States

U.S.M.S.